UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GERALD T. CAMPBELL,

    Plaintiff,

  v.         Case No. 19-cv-1369-pp

RANDALL GEORGE CAMPBELL,
BRIGETTE PATTON, DAVID READER,
and MIRIAM A. CAVANAUGH,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 15, 16), DENYING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT (DKT. NO. 26) AND DISMISSING CASE FOR LACK OF JURISDICTION**

On September 19, 2019, the plaintiff, representing himself, filed this complaint against his brother, Randall G. Campbell ("Randall"), his niece Brigette L. Patton (Randall's daughter), David J. Reader (a judge in Livingston County, Michigan) and Miriam A. Cavanaugh (also a judge in Livingston County), alleging that the defendants participated in the unlawful termination of his parental rights. Dkt. No. 1.

The court received Reader's waiver of service on October 17, 2019. Dkt. No. 7. The court received Cavanaugh's waiver of service on October 29, 2019. Dkt. No. 12. On October 8, 2019, the court received from Patton and Randall a letter, asserting that the plaintiff is mentally ill and that the issues he raises in the complaint already have been resolved. Dkt. No. 4. (These defendants also provided the court with various documents relating to the termination of the

1

plaintiff's parental rights, dkt. no. 4-1). Proof of service shows that defendants Randall and Patton were personally served on November 6, 2019. Dkt. No. 14.

Judge Reader has filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), (3) and (6), dkt. no. 15, as has Judge Cavanaugh, dkt. no. 16. Between December 19 and 23, 2019, the plaintiff filed three different responses. Dkt. Nos. 17-19. Reader and Cavanaugh each filed reply briefs in support of their motions, dkt. nos. 20, 21, to which the plaintiff provided a combined response, dkt. no. 22.

The court will grant both motions to dismiss for lack of subject-matter jurisdiction and dismiss the claims against defendants David Reader and Miriam Cavanaugh. The court also lacks subject matter jurisdiction over defendants Randall Campbell and Brigette Patton and will dismiss the claims against them.

## I. Facts

The plaintiff alleges that his wife homeschooled their twelve-year-old daughter Aria, who was "healthy, happy, autistic, 130#." Dkt. No. 1 at 3. The plaintiff's wife was dying, however, and a hospital worker called child protective services. Id. The plaintiff alleges that a case worker had him call his brother, defendant Randall, for help, and that on February 8, 2015, his brother took Aria to Howell, Michigan "temporarily." Id. The plaintiff asserts that "they"— presumably Randall's family—ate organic, which Aria didn't like, and that she wanted to take baths while "they" wanted her to shower; the plaintiff says that Aria "didn't like things different." Id. The plaintiff alleges that Randall "could

not handle her difference," and that instead of returning Aria to the plaintiff, Randall gave Aria to Randall's daughter, Patton. Id. at 3-4.

The complaint alleges that on May 5, 2015, Patton applied for guardianship over Aria. Id. at 4. Patton was granted full guardianship less than a month later, on June 3, 2015. Id. On October 13, 2015, the plaintiff's wife died and the plaintiff began his attempt to bring Aria back to Wisconsin. Id. The plaintiff asserts, however, that "excuses were made" until January 4, 2016, when Patton filed for a personal protection order (PPO) against the plaintiff and "passed Aria off to someone else." Id. The plaintiff claims Patton thought that he was "too old and didn't have enough money to take care of Aria." Id. The plaintiff claims that Patton took it upon herself to "get Aria away from [him]," and that Patton stated in a text to the plaintiff that Patton "told Aria she would never go back to Wisconsin." Id.

The plaintiff asserts that the PPO "was dropped" on March 24, 2016. Id. He alleges that David Reader was the "judge on the false PPO." Id. at 5. The plaintiff alleges that on two occasions—March 24 and March 31, 2016—after not allowing the plaintiff to say anything, Reader told the plaintiff that "after reviewing all the evidence you never should have had any children and I will make sure you never do." Id. The plaintiff says that Reader asked the plaintiff if the plaintiff had a lawyer, then said, "If you don't—you have one now!!" Id. The plaintiff appears to allege that Reader then told the plaintiff that Reader was going to terminate the plaintiff's parental rights, and asked some unidentified person, "How fast can we do it?" Id. The unidentified person responded, "One

3

week," to which Reader replied, "I will give you two!" Id. The plaintiff says that Reader then said, "You are not to have any contact with your daughter." Id. The plaintiff asserts that when he asked for files, he was told, "For the courts eyes only." Id. The plaintiff contends that Reader was biased against the plaintiff "from the beginning." Id.

The plaintiff states that Judge Miriam Cavanaugh "had this case passed on to her in Family Division Livingston Co. Howell, MI." Id. at 6. The plaintiff alleges the following against defendant Cavanaugh:

> I believe Judge Miriam Cavanaugh did not do her job as judge because she stated "there were no attemps [sic] made to preserve and unify the family because it was "previously determined in a prior court." She made no effort to find out anything and she never let [the plaintiff] speak in court. [The plaintiff's] lawyer said (text) [the plaintiff] did not have to appear that day (court in MI and [the plaintiff] in WI) but Judge Miriam Cavanaugh called [the plaintiff] and said, "Since you didn't care enough to show up today I am terminating your parental rights." She took someone elses word as fact without checking herself or talking to [the plaintiff]. [The plaintiff] needed help while [his] wife was dying and without all the facts she terminated [the plaintiff's] parental rights.

Id.

The plaintiff seeks court costs, fees, fines and compensatory damages. He also asks the court to "prosecute" Patton and to "sentence" Randall. Id. at 7. Finally, he asks the court to order Judge Cavanaugh to reinstate his parental rights. Id. at 8.

## II.    Motion for Entry of Default (Dkt. No. 26)

The plaintiff filed a request for entry of default and a motion for default judgment against defendants Randall and Patton, asserting that neither

4

defendant had responded to the lawsuit or to subpoenas he had filed. Dkt. No. 26.

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," and the plaintiff shows that failure "by affidavit or otherwise," the clerk "must" enter default. As the court noted, the plaintiff served the summons and complaint on Randall and Patton on November 5, 2019. Dkt. No. 14. On October 8, 2019, however, more than two weeks after the plaintiff filed the complaint and almost a month *before* the plaintiff formally served them with process—Randall and Patton filed a letter and supporting documents disputing the allegations in the complaint. Dkt. Nos. 4, 4-1. Given this filing, the court cannot conclude that Randall and Patton have "failed to plead or otherwise defend." Because the plaintiff is not entitled to default, he is not entitled to default judgment. The court will deny the motion.

## III.    **Jurisdiction**

Federal courts are courts of limited jurisdiction. They have the authority to consider and decide cases that involve violations of federal laws or the federal constitution—this is called "federal question" jurisdiction. 28 U.S.C. §1331. They also have the authority to consider and decide lawsuits between citizens of different states, if the amount in controversy is more than $75,000— this is called "diversity jurisdiction." 28 U.S.C. §1332. Federal courts cannot consider and decide lawsuits alleging violations of *state* law unless the plaintiff lives in a different state from every defendant (and the amount of claimed

5

damages exceeds $75,000), or unless the state-law claims relate to a federal claim. Nor can a federal court in a particular district preside over a case against a defendant who does not have sufficient ties to that district to give the defendant warning that he or she might be sued there. And federal courts cannot act as appeal courts for state-court decisions.

A.     Diversity Jurisdiction

Although the plaintiff did not mark the box on his complaint alleging that the court has "diversity" jurisdiction, the court will analyze that question first.

Where a plaintiff alleges that the court has diversity jurisdiction, the parties must be completely diverse. Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806). Each plaintiff must have citizenship different from that of each defendant. Id.

The plaintiff asserts that in 2015 (and, perhaps, 2016), he was living in Wisconsin. The complaint, however, states that at the time he filed it, the plaintiff lived at 2678 North 64th Avenue in Hart, Michigan. Dkt. No. 1 at 1. The plaintiff attempted to send "subpoenas" to the defendants from a United States Postal Service office in Hart, Michigan on September 26, 2019, dkt. no. 5-1 at 3, listed the Hart, Michigan address as his return address on mail sent to defendant Cavanaugh and sent certified mail to Cavanaugh from the post office in Hart, Michigan on October 21, 2019, dkt. no. 8-1 at 2, listed the Hart, Michigan address as his return address on a December 16, 2019 letter to Reader's counsel, dkt. no. 17-1 and showed the Hart, Michigan address as his address on his February 2020 motion for default, dkt. no. 26 at 4. The plaintiff

6

is a Michigan resident. The complaint alleges that Randall, Patton, Reader and Cavanaugh also are residents of Michigan. Dkt. No. 1 at 5.

Because the plaintiff and the defendants all live in Michigan, there is no "diversity," and this federal court does not have subject-matter jurisdiction over the case under 28 U.S.C. §1332. It has jurisdiction over the case, therefore, only if the plaintiff is suing the defendants for violating a federal law or a provision of the federal Constitution.

B.     <u>Federal Question Jurisdiction</u>

The plaintiff marked the box on the complaint asserting that he is suing for violations of federal law under 28 U.S.C. §1331. Dkt. No. 1 at 7. Lawsuits brought in federal court under 28 U.S.C. §1331 must include a federal question evident on the face of the plaintiff's complaint. <u>City of Beloit v. Local 643 of Am. Fed'n of State, Cty. and Mun. Employees, AFL-CIO</u>, 248 F.3d 650, 652 (7th Cir. 2001). The complaint does not identify any federal statute or any provision of the federal Constitution that the plaintiff believes the defendants have violated. But the court must liberally construe complaints filed by plaintiffs who are representing themselves and must hold such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal v Moats</u>, 581 F.3d 714, 720 (7th Cir. 2017) (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)). The court has reviewed the allegations in the complaint to determine whether the plaintiff has stated a federal question claim against any of the defendants.

7

1. *Randall and Patton*

Neither Randall nor Patton have alleged that the court lacks subject-matter jurisdiction. But district courts have an obligation to determine whether subject-matter jurisdiction exists, even without a challenge from the defendants. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). If the court finds it lacks subject matter jurisdiction, it must dismiss the case. Id.

The plaintiff has alleged that at a case worker's request, he asked Randall to take Aria from Wisconsin to Michigan temporarily, while the plaintiff was with his dying wife, and that when things didn't work out, Randall "passed" Aria off to Randall's daughter, rather than returning her to the plaintiff. Dkt. No. 1 at 3-4. He asks that Randall be "sentenced/fined for custodial interference," made to pay all court costs and legal fees and ordered to pay $125,000 "to help replace our home [and] belongings." Id. at 7. The court is aware of no federal civil law prohibiting a family member from returning to a parent a child temporarily placed in that family member's custody. Both Wisconsin and Michigan have *state* statutes prohibiting custodial interference. M.C.L.A. §750.350, W.S.A. §948.31. But this federal court does not have jurisdiction to enforce those state statutes.

Further, the Michigan and Wisconsin custodial interference statutes are *criminal* statutes. Even if they were federal statutes, the plaintiff could not sue under them—a private citizen cannot "pursue claims under federal criminal statutes." Norman v. Campbell, 87 F. App'x. 582, 584-85 (7th Cir. 2003).

Nor can the plaintiff sue Randall for violating his civil rights. Section 1983 of Title 42 allows a person to sue for a violation of his civil (constitutional) rights only if the defendant was acting "under color" of state law. 42 U.S.C. §1983. "Action is taken under color of state law 'when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Barnes v. City of Centralia, Ill., 943 F.3d 826, 831 (7th Cir. 2019) (quoting Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010)). The complaint does not allege that Randall was a state official or that he was acting under the authority of state law. The court cannot discern any federal cause of action alleged against Randall.

The plaintiff alleges that Patton kidnapped Aria, filed a false PPO and helped take the plaintiff's child from him. Dkt. No. 1 at 7. He asks that Patton "be prosecuted to the fullest extent of the law for the lies she told [and] the fraud she perpetuated," as well as being fined $125,000 and "help with home." Id.

As to the plaintiff's allegation that Patton kidnapped Aria, the plaintiff asserts that "[t]he fact that Aria is a minor—crossing state lines—that makes it Federal." Dkt. No. 17 at 4. Although there is a *federal* law that prohibits interstate kidnapping (the Federal Kidnapping Act, 18 U.S.C. §1201), it is a *criminal* statute. Only the United States government may prosecute a federal criminal statute, and as noted above, a private citizen cannot force the government to prosecute because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Diamond v. Charles,

9

476 U.S. 54, 64 (1986) (quoting <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973)); <u>Norman</u>, 87 F. App'x. at 584-85. The plaintiff cannot sue Patton in federal court for kidnapping.

If Patton made false statements on the petition for a PPO, those false statements would have violated M.C.L.A. §600.2950(24) ("An individual who knowingly and intentionally makes a false statement to the court in support of his or her petition for a personal protection order is subject to the contempt powers of the court"). Again, such false statements would have been violations of *state* law, and it would have been up to the *state* courts to determine whether Patton should be held in contempt. This federal court has no jurisdiction over that state-law claim.

Finally, as the court has noted regarding the plaintiff's claims against Randall, there is no *federal* law prohibiting custodial interference.

The court does not have federal question jurisdiction over the claims against Randall and Patton and must dismiss the claims against them.

> 2. *Reader and Cavanaugh*

The plaintiff alleges that defendant Reader did not seek the truth and was biased in his decision. Dkt. No. 1 at 7. He alleges that defendant Cavanaugh did not get the truth or give him his day in court. <u>Id.</u> at 7-8.

Reader and Cavanaugh are (or were at the time of the events the plaintiff describes) state-court judges. The Fourteenth Amendment to the federal Constitution prohibits states—and state actors, such as state-court judges— from depriving "any person of life, liberty, or property, without due process of

10

law." Under 42 U.S.C. §1983, a person may sue anyone who, while acting under color of state law, deprives the person of his rights under the United States Constitution, including his right to due process.

A court ordinarily presumes that "public officials have '"properly discharged their official duties."'" Bracy v. Gramley, 520 U.S. 899, 909 (1997) (quoting United States v. Armstrong, 517 U.S. 456, 464 (1996)). But because a basic requirement of due process under the Fourteenth Amendment is a "fair trial in a fair tribunal," In re Murchison, 349 U.S. 113, 136 (1955), the Supreme Court has recognized circumstances "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Withrow v. Larkin, 421 U.S. 35, 47 (1975). Those circumstances are not common; "'most matters relating to judicial disqualification [do] not rise to a constitutional level.'" Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 876 (2009) (quoting FTC v. Cement Inst., 333 U.S. 683, 702 (1948)). "Personal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under the Due Process Clause.'" Caperton, 556 U.S. at 877 (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986)). Rather, a judge must recuse himself or herself when the judge has "a direct, personal, substantial, pecuniary interest" in the case. Tumey v. Ohio, 273 U.S. 510, 523 (1927). A judge also may be required to recuse himself if he finds someone in contempt, and then is called upon to preside over the contempt trial. See In re Murchison, supra. In deciding whether judicial bias rises to the level of a due process violation, a

11

court must consider "whether the average judge in [the allegedly biased judge's] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" <u>Caperton</u>, 556 U.S. at 881.

The plaintiff alleges that Reader was biased against him during hearings relating to Aria. Dkt. No. 1 at 5. The plaintiff does not explain why he believes Reader was biased, other than his assertion that Reader told the plaintiff that after reviewing all of the evidence, Reader believed that the plaintiff should not have had children and that Reader would make sure the plaintiff never did have children, and that Reader was going to terminate the plaintiff's parental rights. <u>Id.</u> The plaintiff does not allege that Reader had a monetary interest in the decision regarding whether to terminate the plaintiff's parental rights, or that he had some prior experience with the plaintiff that made him unbiased. The plaintiff appears to believe that Reader was biased simply because Reader considered the plaintiff to be an unfit father.[1] That likely would not be enough to constitute a Fourteenth Amendment violation, but the court does not have enough information at this stage to determine whether the plaintiff has stated a due process claim against Reader on this ground.

---

[1] In his motion for a hearing, the plaintiff gave more details about his allegations. Dkt. No. 25. He asserts that Randall Campbell should have refused to care for Aria because Randall is a registered sex offender. <u>Id.</u> at 4. The plaintiff believes that Reader and Cavanaugh ruled against him because they thought he knowingly turned his daughter over to a sex offender. <u>Id.</u> at 5. These details were not included in the complaint. Even if they had been, this does not show bias on Reader's part. If Reader believed that the plaintiff had turned his daughter over to a sex offender, he would have been justified in relying on that fact in his ruling.

Case 2:19-cv-01369-PP   Filed 09/23/20   Page 12 of 22   Document 28

Regarding the plaintiff's allegations that Reader and Cavanaugh did not allow him to speak at hearings,

> [t]he biological parent of a child has a fundamental right, protected by the due process clause of the Fourteenth Amendment, to parent that child. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981). A parent may be deprived of that right only if she is afforded notice and an opportunity to be heard at a meaningful time in a meaningful way. In cases involving the termination of parental rights or the removal of a child from the parental home, this usually would require a hearing and an opportunity to participate in that hearing. *Ellis v. Hamilton*, 669 F.2d 510, 512 (7th Cir. 1982). When the state provides adequate remedies to the parent, there is no due process violation. *Id.* at 515.

McCallum v. Dewey, Nos. 19-cv-415, 19-cv-468, 2020 WL 1166653, at *1 (W.D. Wis. Mar. 11, 2020). If Reader or Cavanaugh refused to allow the plaintiff (or, if he had a lawyer, the plaintiff's lawyer) an opportunity to participate meaningfully in the hearings, that could rise to the level of a due process violation.[2] The court does not have enough information to determine whether the plaintiff has stated a due process claim on this ground.

Finally, the court does not have enough information to determine whether the plaintiff has stated a due process claim against Reader or Cavanaugh based on his assertions that they did not try to find the truth.

In many cases, when the court does not have sufficient information to determine whether a plaintiff has stated a claim, the court will allow the plaintiff the opportunity to amend his complaint to provide further information.

---

[2] The plaintiff's motion for a hearing contradicts his statement that he wasn't allowed to speak. In that motion, he says that he "offered both Judges [his] information and they would not accept it." Dkt. No. 25 at 9. He says that the judges ruled without having all of the information. Id.

13

That would be futile in this case, however, for reasons the court will explain next.

C.    Personal Jurisdiction

Even if the plaintiff could amend his complaint to provide enough facts to state claims against Reader and Cavanaugh for due process violations (providing the court with subject-matter jurisdiction), the court would not have personal jurisdiction over those defendants.

Personal jurisdiction is a due process concept.

> The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit . . . not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 . . . (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 . . . (1940)).

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982). For a federal court to have personal jurisdiction over a defendant, the plaintiff is required to show that "[t]he defendant must have purposefully established minimum contacts with the forum." Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 942-43 (7th Cir. 2000) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985)). The question is "whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there . . . ." Id. at 943.

When a defendant moves to dismiss a case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden is on the plaintiff to establish personal jurisdiction. Curry v. Revolution Laboratories, LLC, 949 F.3d 385, 392 (7th Cir. 2020) (citing Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003)). Without benefit of an evidentiary hearing, "the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." uBID, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 423 (7th Cir. 2010). The court takes "the plaintiff's asserted facts as true and resolve[s] any factual disputes in its favor." Id.at 424 (citing Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010); Purdue, 338 F.3d at 782).

In determining whether it has personal jurisdiction, a federal court looks to the forum state of the case in which it sits to determine the limits of its personal jurisdiction. Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014). This court looks to the law of Wisconsin. Wisconsin courts employ a two-step inquiry when determining whether a court has personal jurisdiction over a nonresident defendant. First, the court determines whether any of the criteria for personal jurisdiction under Wisconsin's long-arm statute are satisfied. U.S. Venture Inc. v. McCormick Transp. LLC, No. 15-cv-990, 2015 WL 6694031, *2-3 (E.D. Wis. 2015) (citations omitted). Wisconsin's personal jurisdiction statute, Wis. Stat. §801.05, "has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" Felland v. Clifton, 682 F.3d 665, 678

(7th Cir. 2012) (quoting <u>Daniel J. Hartwig Assocs., Inc. v. Kanner</u>, 913 F.2d 1213, 1217 (7th Cir. 1990)).

If the requirements of the long-arm statute are satisfied, the court then must consider whether the exercise of jurisdiction over the defendant is consistent with due process. <u>U.S. Venture</u>, 2015 WL 6694031 at *2-3. "[B]ecause Wisconsin presumes its long-arm statute merely codifies the federal due process requirements . . . the burden shifts to [the defendant] to show that jurisdiction would nonetheless violate due process." <u>Total Admin. Servs. Corp. v. Pipe Fitters Union Local No. 120 Ins. Fund</u>, 131 F. Supp. 3d 841, 844 (W.D. Wis. 2015) (quoting <u>Logan Prods. Inc. v. Optibase, Inc.</u>, 103 F.3d 49, 52 (7th Cir. 1996)).

"The primary focus of [a court's] personal jurisdiction inquiry is the defendant's relationship to the forum State." <u>Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.</u>, ___ U.S. ___, 137 S. Ct. 1773, 1779 (2017). The Supreme Court has identified "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." <u>Id.</u> at 1780 (quoting <u>Goodyear Dunlop Tires Operations, S.C. v. Brown</u>, 564 U.S. 915, 919 (2011)). When the defendant is an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" <u>Id.</u> at 1780 (quoting <u>Goodyear</u>, 564 U.S. at 919). Specific personal jurisdiction, however, "requires that the defendant's contacts with the forum state relate to the challenged conduct." <u>Felland</u>, 682 F.3d at 673. "In other words, there must be 'an affiliation between the forum and the

16

underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting Goodyear, 564 U.S. at 919). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." Advanced Tactical, 751 F.3d at 801 (citing Walden v. Fiore, 571 U.S. 277, 284 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).

> [N]ot just any contacts will do: "[f]or a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." [*Walden v. Fiore*, [571 U.S. 277, 284], 134 S. Ct. 1115, 1121 (2014)] (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant himself' creates with the forum . . . ." Id.at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475. . . (1985)).

Id. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." Purdue, 338 F.3d at 780. The due process requirement of "fair warning" to an out-of-state defendant that he might be sued in the forum state "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum. Burger King, 471 U.S. at 472 (citing Keeton, 465 U.S. at 774). "Such 'purposeful direction' may be shown by evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state." Curry, 949 F.3d at 398.

17

Reader alleges that he lives in Michigan, never has lived in Wisconsin, never has owned or operated a business in Wisconsin and was last in Wisconsin over twenty years ago. Dkt. No. 15 at 30. He asserts that all the actions he took in the plaintiff's parental rights case took place in Michigan, and that any injury the plaintiff alleges to have suffered from Reader's actions occurred in Michigan. Id. Similarly, Cavanaugh asserts that she is a resident of Michigan, owns no property in Wisconsin, does not maintain an office in Wisconsin and last visited Wisconsin over twenty years ago. Dkt. No. 16 at 17. She alleges that her only recent "contact" with Wisconsin was to preside—in Michigan—over a case involving a Wisconsin party (the plaintiff). Id. at 18-19. Neither Reader nor Cavanaugh[3] would have any reason to believe that they could be subject to suit in federal court in Wisconsin, and it would violate due process to require them to defend this suit in federal court in Wisconsin.

D. Rooker/Feldman Doctrine

While he doesn't put it this way, the plaintiff's lawsuit also implicitly asks this federal court to overturn the decisions Reader and Cavanaugh made in his Michigan TPR case. "[T]he *Rooker-Feldman* doctrine[4] 'precludes lower federal court jurisdiction over claims seeking review of state court judgments . . .

---

[3] While the court has found that it does not have subject-matter jurisdiction over the claims against Randall and Patton, it notes that it does not have personal jurisdiction over them, either. The complaint alleges that Randall came to Wisconsin one time, at the plaintiff's request. It does not allege that Randall did anything in Wisconsin.

[4] Named after two Supreme Court decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." Brokaw v. Weaver, 305 F.3d 660, 664 (7th Cir. 2002) (quoting Remer v. Burlington Area Sch. Dist., 205 F.3d 990, 996 (7th Cir. 2020)). The Rooker-Feldman doctrine requires the court to look at whether the "federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 510 (7th Cir. 1996). It applies to claims directly seeking to set aside a state court judgment as well as claims that "do not on their face require review of a state court's decision" but "are inextricably intertwined with a state court judgment." Jakupovic v. Curran, 850 F.3d 898, 902 (7th Cir. 2017) (citing Sykes v. Cook Cty. Circuit Court Probate Div., 837 F.3d 736, 742 (7th Cir. 2016)). Such claims essentially ask the federal district court to engage in "impermissible appellate review." Kamilewicz, 92 F.3d at 510.

Whether the claim is inextricably intertwined with the state court judgment "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." Sykes, 837 F.3d at 742. If the court determines that a claim is inextricably intertwined with a state court judgment, the claim is barred when the "plaintiff had a reasonable opportunity to raise the issue in state court proceedings." Jakupovic, 850 F.3d at 902. This doctrine is applied narrowly, barring claims

19

only where the federal claim cannot be separated from the judgment of the state court. Id. at 902 (citing Sykes, 837 F.3d at 742).

The plaintiff's claim against defendant Cavanaugh directly implicates a state court judgment. The plaintiff is seeking relief from Cavanaugh in the amount of $125,000 for "not getting the truth or giving [him his] day in court" and requesting that Cavanaugh "'reinstate' [his] parental rights." Dkt. No. 1 at 7-8. In order to grant that relief, the court would need to thoroughly review the facts of the case to decide whether the defendant in fact found "the truth."

Even if the court had subject-matter jurisdiction over the plaintiff's due process claims against Cavanaugh, and even if it had personal jurisdiction over Cavanaugh, it appears to the court that the Rooker-Feldman doctrine would divest this court of jurisdiction.

The same is true for the plaintiff's claims that defendant Reader "did not seek the truth" and that he was "biased" against the plaintiff. The court cannot determine whether Reader was biased or whether he sought the truth without conducting a thorough review of the entire record and the reason for Reader's rulings. The plaintiff also had a reasonable opportunity to present a claim for bias against Reader. Michigan has specific procedural rules for raising a claim of judicial bias in state trial court. See MCR §2.003(D)(1)(a). Michigan allows a party to "raise the issue of a judge's disqualification by motion" if "[t]he judge is biased or prejudiced for or against a party or attorney." MCR §2.003(B) and (C)(1)(a). Under MCR §2.003(d)(1)(a), the plaintiff was required to raise the issue "within 14 days of the discovery of the grounds for disqualification."

E.    Other Arguments

Reader's motion to dismiss also asserted improper venue, dkt. no. 15 at 12, judicial immunity, id. at 14, and *res judicata*, id. at 17. Cavanaugh asserted improper venue, dkt. no. 16 at 9, and judicial immunity, id. at 10. While these claims likely have merit, the court need not analyze them given its conclusion that it lacks jurisdiction over the claims against Reader and Cavanaugh.

Cavanaugh requested oral argument. Dkt. No. 16 at 1. When several months passed without the court acting on the motions to dismiss, the plaintiff requested a hearing. Dkt. No. 25. Because the court had delayed ruling on the pending motions for far too long (mostly due to its heavy caseload), the court granted the plaintiff's request and scheduled a hearing. But as it began to prepare for the hearing, it realized that it had no jurisdiction. Without jurisdiction, the court cannot hold a hearing.

Finally, the court recounts the following from the plaintiff's response in opposition to the motions to dismiss:

> All I wanted from the start was help holding my family together during a crisis. My wife died, my family wouldn't give my daughter back. The system got involved and I have spent the last 4 years of my life trying to get my daughter back in my life. Nobody has seen all the information[.] Every decision in the last 4 years has been made without all of the information.
>
> I believe all I need is one judge who will look at all of the information and I believe they will see I am a man down on his luck who needed help and trusted the wrong people. I believe the only thing I am guilty of is trusting my family. Randy said he would help me when he should have told the truth and tell me he couldn't help because he had a record. He didn't say + I didn't know. Randy, his wife or his daughter Brigette thought I should know that Randy was a sex

21

offender. They all knew I didn't. I don't believe Randy or Brigette have the best track record yet the judges chose to believe them instead of me. I did my research. I followed the rules. I just want someone to hear the whole story.

Dkt. No. 17 at 8-9.

The court is saddened by the plaintiff's story of loss and his struggles to make things right. It appears that he has suffered, and that he very much wants to be a part of his daughter's life. But the place for him to seek relief was in the state courts of Michigan or, if he believes he has federal claims, in the Michigan federal courts. This court cannot act without jurisdiction. It cannot grant relief based on empathy or sympathy for someone. It has no choice but dismiss the plaintiff's claims and to dismiss the case.

## IV. Conclusion

The court **GRANTS** defendants Reader's and Cavanaugh's motions to dismiss. Dkt. Nos. 15, 16.

The court **DENIES** the plaintiff's motion for entry of default and default judgment. Dkt. No. 26.

The court **ORDERS** that the hearing scheduled for September 28, 2020 at 1:30 p.m. by telephone is **REMOVED** from the hearing calendar.

The court **DISMISSES** the case with prejudice for lack of jurisdiction and will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 23rd day of September, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

22